**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CARL CAREY, Ph.D. § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> LONE STAR COLLEGE SYSTEM, § <br> STEPHEN HEAD, SHELLEY § <br> CARAWAY, KATHERINE PERSSON § <br> And REBECCA RILEY, Individually § <br> Defendants. § | CIVIL ACTION NO. 16-1638 <br> Jury Demanded |

---
**ORIGINAL COMPLAINT**
---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff Carl Carey, PhD ("Plaintiff") and files this Original Complaint against Defendant Lone Star College System ("LSCS"), Stephen Head, Shelley Caraway, Katherine Persson and Rebecca Riley, Individually (collectively, "Defendants") and would respectfully show the Court the following:

### I. PARTIES AND SERVICE

1. Plaintiff Carl Carey, Ph.D. is a citizen of the United States and resident of Harris County, Texas.

2. Defendant Lone Star College System is a State of Texas publicly funded, two year community college which may be served with citation and summons by serving Lone Star College Chancellor, Stephen C. Head, Ph.D. at 5000 Research Forest Drive, The Woodlands, Texas 77381-4356. Copy of the summons and complaint is also being sent to Lone Star College General Counsel, Mario Castillo at 5000 Research Forest Drive, The Woodlands, Texas 77381-4356 and to the Texas Attorney General's Office at the Office of the Attorney General, 300 W. 15th Street, Austin, TX 78701.

3. Shelley Caraway is an officer and/or agent of Lone Star College System. She may be served with process at 26883 Castlecliff Ln., Kingwood, TX 77339

4. Katherine Persson is an officer and/or agent of Lone Star College System. She is the President of Lone Star College Kingwood Campus. She may be served with process at 24145 Creekwood Dr., Splendora, TX 77372.

5. Rebecca Riley is an officer and/or agent of Lone Star College System. She is the President of Lone Star College Montgomery Campus. She may be served with process at 2218 Hialeah Dr., Houston, TX 77018-4614.

6. Stephen Head is an officer and/or agent of Lone Star College System. He is the Chancellor of Lone Star College System. He may be served with process at 2 Windflower Pl., Spring, TX 77381.

## II.    JURISDICTION

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

8. Additionally, this Court has supplemental jurisdiction over Plaintiff's pendent common law state claim under Chapter 21 of the Texas Labor Code pursuant to 28 U.S.C. § 1367.

## III.    NATURE OF ACTION

9. Plaintiff brings this action to recover damages for discrimination and retaliation in violation of 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), Chapter 21 of the Texas Labor Code *et seq* and 42 U.S.C. § 1983. Plaintiff was discriminated against because of his race, African American, and his sex, male, when he received oral reprimands; was denied promotions and better employment opportunities; was placed on a Performance Improvement Plan and ultimately terminated. Further, Plaintiff was retaliated against when he complained of discrimination and was placed on a Performance Improvement Plan and ultimately terminated. Defendants'

discriminatory and retaliatory acts were carried out pursuant to an unlawful, organized scheme of discrimination.

## IV.  CONDITIONS PRECEDENT

10. All conditions precedent to jurisdiction have been satisfied. Plaintiff filed Charge No. 460-2015-03855 with the Equal Employment Opportunity Commission ("EEOC") within one hundred eighty days of acts complained of herein. Plaintiff's Original Complaint was filed within ninety days of Plaintiff's receipt of the U.S. Department of Justice's issuance of a right to sue letter.

## V.  BACKGROUND AND FACTS

11. Plaintiff, who is African American, is an experienced and talented educator. He has a wide range of expertise in the areas of education and psychology and has taught at a number of excellent educational institutions. Plaintiff was undoubtedly qualified for his position at Lone Star College-Kingwood.

12. Plaintiff was hired as an Assistant Professor, Education, at the Kingwood Campus in August, 2011. From the time he arrived until the time he was terminated Plaintiff continually received excellent evaluations from students and had no reported issues with colleagues or with his supervisors.

13. When he began working at LSCS, Plaintiff noticed that the racial makeup of Lone Star-Kingwood's employees was quite imbalanced. It is Plaintiff's knowledge and belief that the makeup of LSC-Kingwood's full time faculty and high-level administrators was approximately less than 10% African American. By this approximation alone, it is clear that LSC-Kingwood did not allow African Americans equal access to opportunities with regard to hiring and retention. Based on the System's treatment of Plaintiff is it equally obvious that African Americans are not treated the same as Whites.

14. Plaintiff also noticed that female employees were favored over male faculty members at

LSC-Kingwood. For instance, Plaintiff taught a very heavy load, always received excellent student reviews and worked well with his supervisors from the time he began working at LSC. Brenda Stubbs, who is a White woman, began working as a permanent employee at LSCS-Kingwood at the very same time as Plaintiff. Ms. Stubbs, prior to this time was only a temporary employee of the Kingwood campus.

15. Despite the fact that both Plaintiff and Ms. Stubbs were hired at the same time, Ms. Stubbs was chosen over Plaintiff for the position of Lead Faculty and later, Department Chair. This, despite the fact that Ms. Stubbs held only a master's degree in English and Plaintiff has Ph.D. in Educational Psychology with an emphasis on issues of college student retention (which directly related to the college success courses that he had been hired to teach). Additionally, Plaintiff had years of administrative experience in working with college students on their academic development. In fact, despite his obvious qualifications for the position, Plaintiff was never even approached for the Lead Faculty or Department Chair position. The only explanation for this disparate treatment is that Plaintiff is an African American male and Ms. Stubbs is a White female.

16. In June 2013, Shelley Caraway, a White female, was hired as a Dean for Lone Star College – Kingwood. She oversaw the college success course among other areas. Despite the fact that Plaintiff had worked well with all of his previous supervisors and was receiving stellar student reviews, it was clear from the time that Ms. Caraway began working at LSCS that she held certain preconceived notions about Plaintiff and that she was determined to do what she could to rid LSCS of him. Ms. Stubbs, now Department Chair, and Ms. Caraway, the new Dean, joined efforts to force Plaintiff out of the college. Both of these women, with the support of Vice President for Instruction, Rebecca Riley (White, female) and President, Katherine Persson (White, female) began to indiscriminately harass and discriminate Plaintiff based on his race and sex.

17. In Fall, 2013, Plaintiff noticed that he was not being given the same opportunities that White female faculty members were given. For instance, Plaintiff was not given a psychology teaching assignment for the Spring, 2014 semester despite the fact that Plaintiff had previously agreed with Dr. Riley that a portion of his teaching load would include psychology.

18. Additionally, Ms. Stubbs prioritized a female psychology professor over Plaintiff for prime teaching assignments at the Kingwood campus. Plaintiff was not only overlooked in the psychology department at his own campus despite excellent evaluations, but was in fact overlooked in favor of a female psychology professor in Plaintiff's own department.

19. Further, Ms. Caraway overly scrutinized Plaintiff's work and was always searching for reasons to find fault with him. Around the beginning of February, 2014, Ms. Caraway notified Plaintiff that she was going to perform an in-class evaluation. On February 17, 2014, just days before Plaintiff was to receive a multi-year employment contract from LSCS, Ms. Caraway came into Plaintiff's class, arrived twenty minutes late, unapologetically disrupted his class and conducted an "evaluation" of Plaintiff which was based on her observations of only a portion of his class. Plaintiff never saw the result of that evaluation until after he was terminated.

20. That same day Ms. Caraway invited Plaintiff to join her and Ms. Stubbs in a meeting. During that meeting Ms. Caraway began to inexplicably raise her voice and to verbally challenge Plaintiff. Her comments and complaints were quite vague and she was extremely argumentative with Plaintiff. Ms. Caraway went on to tell Plaintiff that she equated his performance to a "C" for job performance, the lowest evaluation he had ever received, despite the fact that she had worked with him for less than a year and had only evaluated one of his classes and had not even observed that entire class. Plaintiff was floored. Not only was this conversation unexpected but Ms. Caraway made it a point to have the talk in front of Ms. Stubbs, which was very unprofessional of her and quite humiliating for Plaintiff.

21. On or about February 27th (mere days before the March 1st deadline to change Plaintiff's

contract status), Plaintiff received an email from Becky Landry, Senior Manager of Human Resources at the Kingwood campus, requesting a meeting. When Plaintiff arrived Ms. Caraway was also there. Ms. Caraway proceeded to accuse Plaintiff of a variety of misconduct in his work, none of which was true. In that same meeting, Ms. Caraway threatened Plaintiff's job. At the end of the meeting Plaintiff was inexplicably placed on a Performance Improvement Plan for the first time in his entire career.

22.     Clearly Plaintiff was being treated differently than similarly situated White, female faculty members and Plaintiff felt a strong need to point out this discrimination. He spoke to Ms. Landry about these issues and specifically told her that he felt as if he was being targeted and asked for protection from Human Resources. He also sent a series of emails to H.R. representatives, Dr. Persson and Dr. Riley detailing his experiences and issues. He then requested that an investigation commence into his charges. Following his complaints he was interviewed by LSCS attorneys and within weeks his allegations were summarily dismissed as without merit.

23.     During March and April 2014, Plaintiff did everything he could to continue to work to the best of his abilities. Yet he was so distraught about the events that he became physically ill.

24.     Plaintiff returned to teach in the Fall of 2014. With regard to his Performance Improvement Plan, Ms. Caraway did absolutely nothing, as promised and outlined, to help Plaintiff to improve and/or to work with him to improve their relationship and to enhance his performance.

25.     On February 26, 2015, David Baty, the interim VP for instruction, and Ms. Landry bizarrely entered Plaintiff's office with police officers waiting in the hallway and told Plaintiff that his contract was not being renewed and that he needed to get his things and go. After nearly four years with LSCS, Plaintiff was summarily terminated and escorted out of the building by police escorts. Plaintiff was extremely humiliated and very upset by this treatment. The semester

had not even ended. There was no need to treat him so egregiously given his time and dedication to the college, yet in no uncertain terms Plaintiff was discharged as if he was no better than a criminal.

## VI. AGENCY OR VICARIOUS LIABILITY

26. Defendants Head, Caraway, Riley and Persson are agents of LSCS and held a management and/or supervisory position over Plaintiff. With respect to the discriminatory and retaliatory acts discussed herein, Head, Caraway, Riley and Persson were acting within the course and scope of their employment as agents of the LSCS.

## VII. COUNT 1 - DISCRIMINATION

27. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

28. Plaintiff is a qualified individual within the meaning of Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.051.

29. Defendant is an employer and a covered entity pursuant to Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.051.

30. Plaintiff was employed by Defendant pursuant to Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.051..

31. Plaintiff is a member of a protected class, African Americans.

32. Plaintiff is a member of a protected class, Males.

33. Plaintiff was denied job benefits when he did not receive promotions; was singled out for scrutiny; was consistently refused support in his job; and was overlooked for preferred jobs and preferred schedules, while Whites and Females received those job benefits and were not so scrutinized based on the fact that they were White and/or Female.

34. Plaintiff was ultimately terminated based on his race and sex.

35. As a direct and proximate result of Defendant's intentionally discriminatory actions,

Plaintiff suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguish and other non-pecuniary losses.

36. As a result of Defendant's intentionally discriminatory actions, Plaintiff suffered and is likely to continue to suffer pecuniary losses, among other things, in the form of lost income and benefits in an amount to be determined at trial.

37. Plaintiff has incurred and will continue to incur attorney's fees, litigation expenses and costs in pursuing his claims for discrimination under the Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.051.

### VIII. COUNT 2 - RETALIATION

38. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

39. Defendant Caraway reprimanded Plaintiff, placed him on a Performance Improvement Plan, verbally harassed him and with the support of Head, Persson and Riley, ultimately terminated him following his complaints of discrimination. Defendant's Persson and Riley sustained, supported, reinforced and helped to instigate Plaintiff's termination. As such, Defendant's actions violated Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.055.

40. As a direct and proximate result of Defendants' intentional retaliatory actions, Plaintiff suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguish and other non-pecuniary losses.

41. As a result of Defendants' intentional retaliatory actions, Plaintiff suffered and is likely to continue to suffer pecuniary loss, among other things, in the form of lost income and benefits in an amount to be determined at trial.

42. Plaintiff has incurred and will continue to incur attorney's fees, litigation expenses and costs in pursuing his claims for retaliation under Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.055.

### IX. COUNT 3 – 42 U.S.C. SECTION 1983

43. Defendants intentionally engaged in unlawful employment practices involving Plaintiff because of his race in violation of 42 U.S.C. Section12983.

44. Plaintiff was deprived of right to an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 1983 based on his race. Defendants were responsible for Plaintiff's termination.

45. Defendants are agents and state officials of the State of Texas, Lone Star College Systems, who acted under the color of state law when they violated Plaintiff's rights under 42 U.S.C. Section 1983.

46. Defendant's actions of denying Plaintiff's right to equal employment were premised upon a policy or custom of violating 42 U.S.C. Section 1983 which was officially adopted by Lone Star College System.

47. Plaintiff is a qualified individual within the meaning of 42 U.S.C. Section 1983.

48. Defendant is an employer and a covered entity pursuant to 42 U.S.C. Section 1983.

49. Plaintiff was employed by Defendant pursuant 42 U.S.C. Section 1983.

50. Plaintiff is a member of a protected class, African Americans.

51. Plaintiff is a member of a protected class, Males.

52. Plaintiff was denied job benefits when he did not receive promotions; was singled out for scrutiny; was consistently refused support in his job; and was overlooked for preferred jobs and preferred schedules, while Whites and Females received those job benefits and were not so scrutinized based on the fact that they were White.

53. Plaintiff was ultimately terminated based on his race.

## X.  DAMAGES

54. Plaintiff sustained damages as a result of the actions and/or omissions of Defendants described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages, including lost wages and benefits in the past and future, in an amount that exceeds the minimum jurisdictional limits of this Court. Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has suffered, continues to suffer, and will suffer in the future.

55. Additionally, as a result of Defendant's above-referenced actions and/or omissions, Plaintiff was required to retain counsel to protect and enforce his legal rights. Accordingly, Plaintiff also seeks compensation for the attorney's fees, as well as out-of-pocket expenses and costs of Court he will have incurred in this action.

## XI.  EQUITABLE RELIEF

59. In addition to the relief set forth above, Plaintiff seeks equitable relief, including costs associated with his termination and unpaid wages.

## XII.  JURY DEMAND

56. Plaintiff demands a jury on all issues to be tried in this matter and herein submits the jury fee.

## XIII. PRAYER

For the reasons set forth above, Plaintiff, Carl Carey, Ph.D. respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for compensatory damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; equitable relief; costs of court; attorney's fees; prejudgment and post-judgment interest provided by law and such other and further relief to which the Plaintiff may be entitled at

law or in equity.

                              Respectfully submitted,



By: _____
Alfonso Kennard, Jr.
Attorney-in-Charge
Texas Bar No. 24036888
alfonso.kennard@kennardlaw.com
Attorney in Charge
Michelle Mishoe Miller
Texas Bar No. 24044991
michelle.miller@kennardlaw.com
2603 Augusta Dr., Ste. 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
**ATTORNEYS FOR PLAINTIFF CARL CAREY, Ph.D.**